STATE OF NORTH CAROLINA

COUNTY OF DURHAM

FILED

2017 DEC 18 PM 3:?

DURHAM COUNTY C.S.C.

BY _____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. __17__ CVS __4624__

RICARDO ROWLAND,

       Plaintiff,

v.

MID-AMERICA APARTMENTS, LP
d/b/a COLONIAL GRAND AT
RESEARCH PARK, COLONIAL
REALTY LP (Research Park) d/b/a
COLONIAL GRAND AT RESEARCH
PARK, MID-AMERICA APARTMENTS,
INC.,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

**(Class Action)**

    Plaintiff Ricardo Rowland (hereafter "Plaintiff" or "Rowland"), on behalf of himself and the proposed classes identified herein, files this Complaint against Mid-America Apartments, LP d/b/a Colonial Grand at Research Park, Colonial Realty LP (Research Park) d/b/a Colonial Grand at Research Park, and Mid-America Apartments, Inc. (hereinafter "Defendants") and states:

## NATURE OF THE ACTION

    1.    This is an action brought by Plaintiff and others similarly situated to obtain redress for the unlawful and unfair debt collection practices engaged in by Defendants in their attempts to collect upon court costs, fees, penalties, and other improper charges, when such costs, fees, and charges are not permitted by law.

    2.    This case arises under the Residential Rental Agreements Act, N.C.G.S. § 42-38 *et seq.*, the North Carolina Debt Collection Act, N.C.G.S. § 75-50 *et seq.*, the North Carolina common law of contracts, and the Uniform Declaratory Judgment Act, N.C.G.S. §

1-253, *et seq.*

3.     This is a class action, filed pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, on behalf of all tenants of any North Carolina apartment complex in which Defendants provide property management services. As discussed in detail herein, the Class is composed of people who, pursuant to Defendants' standardized policies and procedures, have within the past (4) years (a) received one or more communications from Defendants violating North Carolina law as further set forth herein, and/or (b) have paid amounts in excess of those permitted by North Carolina law.

## JURISIDICTION AND VENUE

4.     The foregoing allegations are incorporated by reference and realleged herein.

5.     This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 42-44, N.C.G.S. § 25-1-305, N.C.G.S. §§ 75-16 and 56, N.C.G.S. § 1-75.4 and N.C.G.S. § 1-253.

6.     Venue is proper under N.C.G.S. § 1-79 in that Defendants maintain a place of business in Durham County, North Carolina, and have regularly engaged in business in Durham County, North Carolina.

## PARTIES

7.     The foregoing allegations are incorporated by reference and realleged herein.

8.     Plaintiff Rowland is a citizen and resident of Durham County, North Carolina who at all relevant times, leased an apartment from Defendants at Colonial Grand at Research Park.

9.     Plaintiff is a "tenant" subject to the protections of N.C.G.S. § 42-46.

10.    Plaintiff is a "consumer" as defined by N.C.G.S. § 75-50.

2

11. Defendants are each "landlords" as defined by N.C.G.S. §42-40(3).

12. At all times relevant to this action, Defendants, in the ordinary course of business as the lessors of residential real property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

13. Defendants are each "debt collectors" as defined by N.C.G.S. § 75-50.

14. Defendant Mid-America Apartments, LP d/b/a Colonial Grand at Research Park ("Mid-America"), is, upon information and belief, a foreign limited partnership organized under the laws of the state of Tennessee and regularly conducts business in Durham County, North Carolina.

15. Mid-America owns and operates apartment complexes in North Carolina, including, but not limited to, "Colonial Grand at Research Park" located at 400 Stone Lion Drive in Durham, North Carolina.

16. Defendant Colonial Realty LP (Research Park) d/b/a Colonial Grand at Research Park ("Colonial Realty") is, upon information and belief, incorporated under the laws of the state of North Carolina and maintains a place of business in Durham County, North Carolina.

17. Colonial Realty owns and operates apartment complexes in North Carolina, including, but not limited to, Colonial Grand at Research Park.

18. Defendant Mid-America Apartments, Inc. ("MAA") is, upon information and belief, a real estate investment and management company organized and existing under the laws of Tennessee that maintains a place of business in Durham County, North Carolina.

19. MAA regularly holds and develops property in the State of North Carolina, including, but not limited to, Colonial Grand at Research Park.

20. Upon information and belief, at all times pertinent to this action, MAA owned all

3

of the assets and equities of both Mid-America and Colonial Realty.

21.     Upon information and belief, MAA employs the persons and other entities to operate the properties MAA owns, including those in North Carolina including Colonial Grand at Research Park.

22.     Upon information and belief, MAA owns all assets, equities, and rents derived from Mid-America and Colonial Realty

23.     Upon information and belief, MAA is the only property management company engaged in the work and business of Mid-America and Colonial Realty.

24.     Upon information and belief, the business or work in which Mid-America and Colonial Realty were engaged in at all times alleged herein was within the scope of their authority or was done to further the business MAA, or was done at the direction or control of MAA, and was intended to accomplish the purposes of MAA.

25.     Upon information and belief, Mid-America is a wholly owned subsidiary of MAA.

26.     Upon information and belief, MAA is the parent corporation, and the finances, policies and business practices of Mid-America are and were dominated and controlled by MAA in such a manner so that Mid-America has no separate mind, will, identity or existence of its own and is operated as a mere instrumentality or alter ego of MAA.

27.     Upon information and belief, Colonial Realty is a wholly owned subsidiary of MAA.

28.     Upon information and belief, MAA is the parent corporation, and the finances, policies and business practices of Colonial Realty are and were dominated and controlled by MAA in such a manner so that Colonial Realty has no separate mind, will, identity or existence

4

of its own and is operated as a mere instrumentality or alter ego of MAA.

29.     Upon information and belief, MAA, Mid-America, and Colonial Realty are so closely related in ownership and management, and that each works closely in concert with the other, such that each has become the *alter ego* of the other.

30.     Upon information and belief, MAA, Mid-America, and Colonial Realty regularly conducts business and holds themselves out to the public by the names of their individual apartment complexes operating in North Carolina, including, but not limited to, the "Colonial Grand at Research Park," "Colonial Grand at Patterson Place," "Colonial Village at Deerfield," "Colonial Grand at Brier Creek," "Colonial Grand at Brier Falls," "Colonial Grand at Crabtree," "Colonial Grand at Trinity Commons," "Colonial Village at Beaver Creek," "Hermitage at Beechtree," "Hue," "Post Parkside at Wade," "Reserve at Arringdon," "Preserve at Brier Creek," "Providence at Brier Creek," "Waterford Forest," "1225 South Church," "Colonial Grand at Ayrsley," "Colonial Grand at Beverly Crest," "Colonial Grand at Cornelius," "Colonial Grand at Huntersville," Colonial Grand at Legacy Park," "Colonial Grand at Mallard Creek," "Colonial Grand at Mallard Lake," "Colonial Grand at Matthews Commons," "Colonial Grand at University Center," "Colonial Reserve at South End," "Colonial Village at Chancellor Park," "Colonial Village at Matthews," "Colonial Village at South Tryon," "Enclave," "Post Ballantyne," "Post Gateway Place," "Post Park at Phillips Place," "Post South End," "Post Uptown Place," and "Timber Crest at Greenway."

31.     With respect to all actions and decisions pertinent to this action, Defendants have operated as a single entity.

32.     Any such conduct in violation of North Carolina law by Mid-America and/or Colonial Grand, as alleged anywhere in this Complaint, or as may be discovered during

5

litigation or the trial of this action, is imputed to MAA.

## GENERAL BACKGROUND

33.     The foregoing allegations are incorporated by reference and realleged herein.

34.     Upon information and belief, at all times relevant to the allegations contained herein, Defendants have maintained a uniform, statewide policy of requiring any North Carolina tenant who fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 after the 9th day of any given month, to pay court costs, filing fees, sheriff service fees, and attorneys' fees (collectively the "Court Costs and Attorneys' Fees").

35.     The Court Costs and Attorneys' Fees are assessed in addition to fees specifically authorized by N.C.G.S. § 42-46 (hereinafter the "Collection Policy").

36.     Upon information and belief, pursuant to the Collection Policy, tenants owe, and are required to pay Court Costs and Attorneys' Fees even if: (a) the complaint in summary ejectment has not yet even been filed; (b) the complaint in summary ejectment is dismissed; or (c) a North Carolina Magistrate Judge orders Court Costs and Attorneys' Fees to be assessed against Defendants.

37.     Upon information and belief, each and every tenant of a property owned or managed by Defendants, or either of them, is subject to the Collection Policy.

38.     Upon information and belief, the Collection Policy is uniformly applied to each and every tenant that resides at any of the apartments owned or managed by Defendants.

39.     Upon information and belief, the Collection Policy is mandatory throughout Defendants' properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

6

40.     When a tenant fails to make a full and complete rental payment, or maintains a balance on their account ledger in excess of $0.00 after the 5th day of any given month, Defendants, pursuant to the Collection Policy, charge a late fee of 5% of the tenants' monthly rent (the "Late Fee") purportedly pursuant to N.C.G.S. § 42-46(a).

41.     Plaintiff does not dispute Defendants' charge and collection of the Late Fee.

42.     In addition to charging the Late Fee, Defendants cause written letters or emails to be delivered to the tenant after the 5th of the month stating that if full payment is not made by or before the 9th day of the month, legal action will be instigated and Court Costs and Attorneys' Fees will immediately be owed (hereinafter the "Initial Collection Letter").

43.     Upon information and belief, the Initial Collection Letters are automatically generated by Defendants' property management system, and pursuant to the Collection Policy, delivered to the tenant. Copies of the Initial Collection Letter delivered to Plaintiff are attached hereto as **Exhibits A and B**.

44.     One example of the Initial Collection Letter states "[r]ent not received by 4pm on Friday, December 9th, 2016, will be filed on for eviction and additional fees will apply." See attached **Exhibit A**. The "additional fees" referred to in **Exhibit A** are Court Costs and Attorneys' Fees described herein.

45.     Another example of the Initial Collection Letter states "[i]f we take legal action against you, you will be charged an additional administration fee in accordance with your lease. This fee will be in addition to court costs and filing fees that we will incur to pursue the lawsuit." See attached **Exhibit B**. The "court costs and filing fees" referred to in **Exhibit B** are Court Costs and Attorneys' Fees described in this complaint.

46.     Upon information and belief, pursuant to the Collection Policy, when a tenant

7

fails to make a full and complete rental payment, or maintains a balance on his/her account ledger in excess of $0.00 on or around the 9th day of any given month, Defendants immediately post to the tenant's account ledger the Court Costs and Attorneys' Fees as immediately due and owing.

47.     The Court Costs and Attorneys' Fees posted to a tenant's account ledger are in addition to late fees and the fees specifically authorized by N.C.G.S. § 42-46, including the "Complaint-Filing Fee," which are also posted to the tenant's account.

48.     Upon information and belief, pursuant to the Collection Policy, Court Costs and Attorneys' Fees are entered into a tenant's account ledger on or around the 9th day of the month, and prior to a North Carolina court awarding such amounts to Defendants, and sometimes before a complaint in summary ejectment is even filed.

49.     At the time the Court Costs and Attorneys' Fees are entered into the account ledger as immediately due and owing, Defendants are not entitled to the Court Costs and Attorneys' Fees, and Defendants have not been awarded such fees by a North Carolina court.

50.     Upon information and belief, entering the Court Costs and Attorneys' Fees on a tenant's account ledger as immediately due and owing is mandatory throughout Defendants' North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the Collection Policy.

51.     Upon information and belief, after causing the Court Costs and Attorneys' Fees to be assessed against the tenant's account ledger, Defendants begin attempting to collect upon the balance contained on the account ledger pursuant to its Collection Policy.

52.     Upon information and belief, after the Court Costs and Attorneys' Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will

8

review and reconsider whether such Court Costs and Attorneys' Fees were improperly assessed.

53.     Upon information and belief, even if a complaint in summary ejectment filed against a tenant is dismissed or not even awarded, there are no occasions in which Defendants will review and reconsider whether such Court Costs and Attorneys' Fees were improperly assessed.

54.     Upon information and belief, after the Court Costs and Attorneys' Fees are entered onto an individual's account ledger, there are no occasions in which Defendants will remove such Court Costs and Attorneys' Fees from an individual tenant's account ledger.

## ROWLAND'S FACTS

55.     In August 2015, Rowland entered into a lease contract with Mid-America for an apartment in Colonial Grand at Research Park, 324 Slateworth Drive, Durham, North Carolina 27612 (the "Apartment") for a period from August 19, 2015 though September 18, 2016 (the "2015 Lease").

56.     A true and accurate copy of the 2015 Lease is attached hereto as **Exhibit C**.

57.     Pursuant to the 2015 Lease, Rowland's total monthly rent for the Apartment was $1,168.00.

58.     October 6, 2016, Rowland entered into a new lease contract with Mid-America for the Apartment for a period from October 1, 2016 through September 30, 2017 (the "2016 Lease").

59.     A true and accurate copy of the 2016 Lease is attached hereto as **Exhibit D.**

60.     Pursuant to the 2016 Lease, Rowland's total monthly rent for the Apartment was $1,240.00.

61.     Other than the monthly rent, there is nothing materially different between the

9

2015 Lease and the 2016 Lease.

62.     Pursuant to the 2015 Lease and 2016 Lease (collectively the "Lease"), if Rowland did not pay all of his rent on or before the 5th day of the month, Defendants would charge a late charge of 5% of the monthly rent.

63.     The Lease also specifies that "[l]ate rental payments must include all late and/or legal fees." The "legal fees" referenced in the Lease are the same as Court Costs and Attorneys' Fees described herein.

**December 2016 Eviction Charges**

64.     In December 2016, Rowland was late making a payment. On or about December 6, 2016, a late charge in the amount of $27.79 was posted to Rowland's account ledger pursuant to N.C.G.S. § 42-46(a).

65.     On or about December 6, 2016, pursuant to Defendants' Collection Policy, Rowland received the Initial Collection Letter.

66.     A trued and accurate copy of the Initial Collection Letter Rowland received on December 6, 2016, is attached as **Exhibit A**.

67.     On or about December 9, 2016, before the filing of a complaint in summary ejectment against Rowland, Defendants placed the Court Costs and Attorneys' Fees on his account ledger in the amount of $221.00.

68.     A true and accurate copy of Plaintiff's ledger with Defendants is attached as **Exhibit E**.

69.     However, no hearing had been held at this time and no attorney had appeared in Court to evict Rowland and/or seek the award of Court Costs and Attorneys' Fees.

70      On December 12, 2016, Defendants initiated a complaint in summary ejectment

10

in the Small Claims Division of Durham County General Court of Justice, alleging Rowland owed $1,240.00 in past due rent.

71. A true and accurate copy of the Complaint filed by Defendants against Plaintiff is attached as **Exhibit F**.

72. On or about December 22, 2016, a judgment was entered on behalf of Defendants.

73. A true and accurate copy of the judgment is attached as **Exhibit G**.

74. The December 22, 2016, judgment ordered that "the defendant(s) be removed from and the plaintiff be put in possession of the premises described in the complaint."

75. The court declined to tax the costs of the action to Defendants.

76. After the addition of the late charge, Complaint-Filing Fee, and Court Costs and Attorneys' Fees, the amount alleged to be owed on Rowland's account ledger was $1,659.87.

77. On or about December 23, 2016, Rowland made a payment of $1,659.87. This payment included the rent for December 2016 and included the Complaint-Filing Fee and Court Costs and Attorneys' Fees. See attached **Exhibit E**.

78. Despite the fact that the Court declined to tax the costs of the action to Defendants, Defendants did not, and have not, refunded the Court Costs and Attorneys' Fees to Rowland.

### September 2017 Eviction Charges

79. In September 2017, Rowland was late making a payment. On or about September 6, 2017, a late charge in the amount of $62.00 was posted to Rowland's account ledger pursuant to N.C.G.S. § 42-46(a).

80. On or about September 6, 2017, pursuant to Defendants Collection Policy,

11

Rowland received the Initial Collection Letter.

81.     A true and accurate copy of the Initial Collection Letter Rowland received on September 6, 2017, is attached as **Exhibit B**.

82.     On or about September 8, 2017, pursuant to Defendant's Collection Policy, Rowland received an additional collection letter.

83.     A true and accurate copy of the additional collection letter sent by Defendants on September 8, 2017, is attached as **Exhibit H**.

84.     On or about September 9, 2017, pursuant to Defendant's Collection Policy, Rowland received an additional collection letter.

85.     A true and accurate copy of an additional collection letter sent by Defendants on September 9, 2017, is attached as **Exhibit I**.

86.     On or about September 13, 2017, before the filing of a complaint in summary ejectment against Rowland, Defendants placed the Court Costs and Attorneys' Fees on his account ledger in the amount of $263.00. See attached **Exhibit E**.

87.     However, no hearing had been held at this time and no attorney had appeared in Court to evict Rowland and/or seek the award of Court Costs and Attorneys' Fees.

88.     On September 14, 2017, Defendants initiated a Complaint in Summary Ejectment in the Small Claims Division of Durham County General Court of Justice, alleging Rowland owed $1,240.00 in past due rent.

89.     A true and accurate copy of this Complaint is attached as **Exhibit J**.

90.     After the addition of the late charge, Complaint-Filing Fee, and Court Costs and Attorneys' Fees, the amount alleged to be owed on Rowland's account ledger was $1,742.01.

91.     On or about September 25, 2017, Rowland made a payment of $1,742.01. This

12

payment included the rent for September 2017 and included the Complaint-Filing Fee and Court Costs and Attorneys' Fees. See attached **Exhibit E**.

92. On or about September 28, 2017, Defendants filed a notice of voluntary dismissal.

93. At the time Defendants filed a notice of voluntary dismissal, no court had awarded Court Costs or Attorneys' Fees.

94. A true and accurate copy of the notice of voluntary dismissal is attached as **Exhibit K**.

95. Defendants did not, and have not, refunded the Court Costs and Attorneys' Fees to Rowland.

## COMMON CLASS ALLEGATIONS
### "Preliminary Colonial Grand at Research Park Class"

96. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

97. Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class initially defined as the "Preliminary Colonial Grand at Research Park Class."

> All natural persons who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided at the Colonial Grand at Research Park (c) were contacted by Defendants through the use of written collection attempts substantially similar to the Initial Collection Letter in that it (d) threatens to charge Court Costs and Attorneys' Fees if paid after a specific day of the month.

98. The Preliminary Colonial Grand at Research Park Class members are so numerous that joinder of all is impractical. The names and addresses of potential Preliminary Colonial Grand at Research Park Class members are readily identifiable through the business

records maintained by Defendants, and the Preliminary Colonial Grand at Research Park Class members may be notified of the pendency of this action by published and/or mailed notice.

99. Upon information and belief, within the four (4) year period preceding the filing of Plaintiff's Complaint, Defendants have provided the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to hundreds of proposed Preliminary Colonial Grand at Research Park Class members, and pursuant to the same policies and procedures have represented that a tenant will immediately owe Court Costs and Attorneys' Fees on or after the 9th day of the month.

100. Defendants' policies and procedures, including the Collection Policy, specifically authorize and require individual managers, employees, associates, or other agents of Defendants to cause written collection notifications, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to be delivered to members of the Preliminary Colonial Grand at Research Park Class on or about the 6th day of any month in which a full and complete rental payment is not made.

101. Individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of Defendants' policies and procedures, including the Collection Policy. Each and every member of the proposed Preliminary Colonial Grand at Research Park Class is subject to Defendants' policies and procedures.

102. Each member of the proposed Preliminary Colonial Grand at Research Park Class is a "tenant" subject to the protections of N.C.G.S. § 42-46.

103. Each member of the proposed Preliminary Colonial Grand at Research Park Class is a "consumer" as defined by N.C.G.S. § 75-50.

104. The requirements of Rule 23 are met in that this class, upon information and

14

belief, consists of hundreds of present and former tenants of the Colonial Grand at Research Park apartments who have either already received, or will receive, at least one written collection notification, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter.

105.    Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice, and policy of communicating with all tenants of the Colonial Grand at Research Park apartments that have a balance in excess of $0.00 on their account ledger on or around the 6th day of the month as described herein. Common questions include, but are not limited to:

     a.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, violates N.C.G.S. § 42-46 in that it represents that a specific amount of debt may be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

     b.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-51(8) in that it threatens to increase the amount of debt alleged to be owed with the addition of Court Costs and Attorneys' Fees when such action is not permitted by law prior to an award of such amounts by a North Carolina court;

     c.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-54(4) in that it falsely represents the character, extent, or amount of the debt by stating that a specific amount of will be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

     d.  Whether Defendants' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-54(6) in that it falsely represents that an existing obligation of the consumer may be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

15

106. Plaintiff's claims are typical of the claims of each Preliminary Colonial Grand at Research Park Class member and all are based on the same facts and legal theories.

    a. Defendants have a specific policy of attempting to collect a debt from each member of the proposed Preliminary Colonial Grand at Research Park Class Court Costs and Attorneys' Fees through the use of written collection notification templates, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter immediately upon the expiration of the 5th day of the month.

    b. Defendants cause the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to be delivered to each member of the proposed Preliminary Colonial Grand at Research Park Class that specifically represents that the debt will be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court.

107. Plaintiff has no interests adverse or antagonistic to the interests of other members of the Preliminary Colonial Grand at Research Park Class.

108. Plaintiff will fairly and adequately protect the interests of the Preliminary Colonial Grand at Research Park Class and has retained experienced counsel, competent in the prosecution of consumer debt collection violations in the context of class action litigation.

109. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

110. Defendants have acted on grounds generally applicable to the proposed Preliminary Colonial Grand at Research Park Class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

111. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action. Plaintiff further alleges that certification of

16

the Preliminary Colonial Grand at Research Park Class is appropriate in that:

    a. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individuals' actions would engender;

    b. Each and every member of the proposed Preliminary Colonial Grand at Research Park Class is subject to the same policies and procedures as set forth herein, including the Collection Policy;

    c. The policies and procedures as set forth herein, including the Collection Policy, are mandatory throughout Defendant MAA's North Carolina properties, including the Colonial Grand at Research Park apartments; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of such policies and procedures;

    d. The Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, has been delivered to each member of the proposed Preliminary Colonial Grand at Research Park Class;

    e. Class treatment will permit the adjudication of relatively small claims by many Preliminary Colonial Grand at Research Park Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein;

    f. Absent a class action, the Preliminary Colonial Grand at Research Park Class members will continue to suffer losses of statutorily protected rights as well as monetary damages, and if Defendants' conduct continues to proceed without remedy, they will continue to reap and retain the proceeds of their ill-gotten gains; and

    g. Many consumers are likely unaware of their rights protected by the North Carolina Debt Collection Act and Residential Rental Agreements Act in regards to the threatened imposition of Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court.

## COMMON CLASS ALLEGATIONS:
### "Colonial Grand at Research Park Payment Class"

112.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

113.    Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class initially defined as the "Colonial Grand at

Research Park Payment Class."

> All natural persons who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in an apartment at the Colonial Grand at Research Park (c) were charged Court Costs and Attorneys' Fees prior to a North Carolina court taxing such Court Costs and Attorneys' Fees to the particular individual (d) and actually paid such Court Costs and Attorneys' Fees to Defendants.

114.    The Colonial Grand at Research Park Payment Class members are so numerous that joinder of all is impractical. The names and addresses of potential Colonial Grand at Research Park Payment Class members are readily identifiable through the business records maintained by Defendants, and the Colonial Grand at Research Park Payment Class members may be notified of the pendency of this action by published and/or mailed notice.

115.    Upon information and belief, within the four (4) year period preceding the filing of Plaintiff's Complaint, Defendants have improperly charged Court Costs and Attorneys' Fees to hundreds of proposed Colonial Grand at Research Park Payment Class members, and pursuant to the same policies and procedures, actually collected Court Costs and Attorneys' Fees against such tenants.

116.    Defendants' policies and procedures, including the Collection Policy, specifically authorize and require Defendants to charge Court Costs and Attorneys' Fees to any tenant with a balance on their account ledger in excess of \$0.00 on or immediately after the 9th day of the month. Defendants' policies and procedures, including the Collection Policy, specifically authorize and require Defendants to collect such amounts: (a) prior to filing a complaint in summary ejectment, (b) prior to dismissing any filed complaint in summary ejectment, (c) prior to being awarded such amounts by a North Carolina court, and/or (d) even after a North Carolina court assesses all costs against Defendants.

117.    Individual managers, employees, associates, or other agents of Defendants have

18

no discretion as to the implementation of Defendants' policies and procedures, including the Collection Policy. Each and every member of the proposed Colonial Grand at Research Park Payment Class is subject to Defendants' policies and procedures. Each and every member of the proposed Colonial Grand at Research Park Payment Class has actually paid Court Costs and Attorneys' Fees to which Defendants were not lawfully entitled.

118. Each member of the proposed Colonial Grand at Research Park Payment Class is a "tenant" subject to the protections of N.C.G.S. § 42-46.

119. Each member of the proposed Colonial Grand at Research Park Payment Class is a "consumer" as defined by N.C.G.S. § 75-50.

120. The requirements of Rule 23 are met in that this class, upon information and belief, consists of hundreds of present and former tenants of Colonial Grand at Research Park, who have already been charged, and paid, Court Costs and Attorneys' Fees without lawful authorization.

121. Common questions of law and fact predominate over any individual issues that may be presented, because Defendants have a pattern, practice, and policy of charging and collecting Court Costs and Attorneys' Fees prior to such amounts being awarded by a North Carolina court as described herein. Common questions include, but are not limited to:

   a. Whether Defendants' pattern, practice, and policy of collecting Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court violates N.C.G.S. § 42-46;

   b. Whether Defendants' pattern, practice, and policy of collecting from members of the Colonial Grand at Research Park Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-54(4) in that Defendants collected or attempted to collect debt by falsely representing the character, extent, or amount of the debt by stating that a specific amount of debt is presently due and owing that includes Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

19

c.  Whether Defendants' pattern, practice, and policy of collecting from members of the Colonial Grand at Research Park Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-54(6) in that Defendants falsely represented that an existing obligation of the consumer may be increased by additional court costs, filing fees, or other legal fees prior to the award of such amounts by a North Carolina court; and

d.  Whether Defendants' pattern, practice, and policy of collecting from members of the Colonial Grand at Research Park Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-55(2).

122.  Plaintiff's claims are typical of the claims of each Colonial Grand at Research Park Payment Class member and all are based on the same facts and legal theories.

c.  Defendants have a specific policy of collecting from each member of the proposed Colonial Grand at Research Park Payment Class Court Costs and Attorneys' Fees; and

d.  Defendants' policies and procedures have resulted in potential members of the Colonial Grand at Research Park Payment Class actually paying Court Costs and Attorneys' Fees that are not owed at the time they are collected. Plaintiff has no interests adverse or antagonistic to the interests of other members of the Colonial Grand at Research Park Payment Class.

123.  Plaintiff will fairly and adequately protect the interests of the Colonial Grand at Research Park Payment Class and has retained experienced counsel, competent in the prosecution of consumer debt collection violations in the context of class action litigation.

124.  Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

125.  Defendants have acted on grounds generally applicable to the proposed Colonial Grand at Research Park Payment Class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

126.  A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be

encountered in the management of this class action. Plaintiff further alleges that certification of the Colonial Grand at Research Park Payment Class is appropriate in that:

a. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individuals' actions would engender;

b. Each and every member of the proposed Colonial Grand at Research Park Payment Class is subject to the same policies and procedures as set forth herein, including the Collection Policy;

c. The policies and procedures as set forth herein, including the Collection Policy, are mandatory throughout Defendant MAA's North Carolina properties, including the Colonial Grand at Research Parks; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of the policies and procedures;

d. Class treatment will permit the adjudication of relatively small claims by many Colonial Grand at Research Park Payment Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein;

e. Absent a class action, the Colonial Grand at Research Park Payment Class members will continue to suffer losses of statutorily protected rights as well as monetary damages, and if Defendants' conduct continues to proceed without remedy, they will continue to reap and retain the proceeds of their ill-gotten gains; and

f. Many consumers are likely unaware of their rights protected by the North Carolina Debt Collection Act and Residential Rental Agreements Act in regards to the imposition of Court Costs and Attorneys' Fees prior to dismissing the complaint in summary ejectment filed against a tenant.

## COMMON CLASS ALLEGATIONS:
### "Preliminary North Carolina Class"

127.  The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

128.  Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class initially defined as the "Preliminary North Carolina Class."

21

All natural persons who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in any of the properties in North Carolina owned and operated by Defendants (c) were contacted by Defendants through the use of written collection attempts substantially similar to the Initial Collection Letter in that it (d) threatens to charge Court Costs and Attorneys' Fees if paid after a specific day of the month.

129.    The Preliminary North Carolina Class members are so numerous that joinder of all is impractical. The names and addresses of potential Preliminary North Carolina Class members are readily identifiable through the business records maintained by Defendants (hereinafter the "NC MAA Entities"), and the Preliminary North Carolina Class members may be notified of the pendency of this action by published and/or mailed notice.

130.    Upon information and belief, within the four (4) year period preceding the filing of Plaintiff's Complaint, the NC MAA Entities have provided the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to thousands of proposed Preliminary North Carolina Class members, and pursuant to the same policies and procedures have set forth that a tenant will immediately owe Court Costs and Attorneys' Fees on or after the 9th day of the month.

131.    NC MAA Entities' policies and procedures, including the Collection Policy, specifically authorize and require individual managers, employees, associates, or other agents to cause written collection notifications, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to be delivered to members of the Preliminary North Carolina Class on or about the 6th day of any month in which a full and complete rental payment is not made.

132.    Individual managers, employees, associates, or other agents of the NC MAA Entities have no discretion as to the implementation of the NC MAA Entities' policies and procedures, including the Collection Policy. Each and every member of the proposed

22

Preliminary North Carolina Class is subject to the NC MAA Entities' policies and procedures.

133. Each member of the proposed Preliminary North Carolina Class is a "tenant" subject to the protections of N.C.G.S. § 42-46.

134. Each member of the proposed Preliminary North Carolina Class is a "consumer" as defined by N.C.G.S. § 75-50.

135. The requirements of Rule 23 are met in that this class, upon information and belief, consists of thousands of present and former tenants of the NC MAA Entities, who have either already received, or will receive, at least one written collection notification, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter.

136. Common questions of law and fact predominate over any individual issues that may be presented, because the NC MAA Entities have a pattern, practice, and policy of communicating with all tenants of their apartments that have a balance on their account ledger on or around the 6th day of the month as described herein. Common questions include, but are not limited to:

    a. Whether the NC MAA Entities' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, violates N.C.G.S. § 42-46 in that it represents that a specific amount of debt may be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

    b. Whether the NC MAA Entities' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-51(8) in that it threatens to increase the amount owed by Court Costs and Attorneys' Fees when such action is not permitted by law prior to an award of such amounts by a North Carolina court;

    c. Whether the NC MAA Entities' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some

23

other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-54(4) in that it falsely represents the character, extent, or amount of the debt by stating that a specific amount of will be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court; and

d. Whether the NC MAA Entities' pattern, practice, and policy of collecting and/or attempting to collect debt through the use of the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, constitutes a violation of N.C.G.S. § 75-54(6) in that it falsely represents that an existing obligation of the consumer may be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court.

137.    Plaintiff's claims are typical of the claims of each Preliminary North Carolina Class member and all are based on the same facts and legal theories.

e. The NC MAA Entities have a specific policy of attempting to collect debt from each member of the proposed Preliminary North Carolina Class Court Costs and Attorneys' Fees through the use of written collection notification templates, including the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter immediately upon the expiration of the 5th day of the month; and

f. Defendants cause the Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, to be delivered to each member of the proposed Preliminary North Carolina Class that specifically represents that the debt will be increased by Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court.

138.    Plaintiff has no interests adverse or antagonistic to the interests of other members of the Preliminary North Carolina Class.

139.    Plaintiff will fairly and adequately protect the interests of the Preliminary North Carolina Class and has retained experienced counsel, competent in the prosecution of consumer debt collection violations in the context of class action litigation.

140.    Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

141. The NC MAA Entities have acted on grounds generally applicable to the proposed Preliminary North Carolina Class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

142. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action. Plaintiff further alleges that certification of the Preliminary North Carolina Class is appropriate in that:

    a. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individuals' actions would engender;

    b. Each and every member of the proposed Preliminary North Carolina Class is subject to the same policies and procedures as set forth herein, including the Collection Policy;

    c. The policies and procedures as set forth herein, including the Collection Policy, are mandatory throughout Defendant MAA's North Carolina properties; individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of such policies and procedures;

    d. The Initial Collection Letter, or some other written correspondence substantially similar to the Initial Collection Letter, has been delivered to each member of the proposed Preliminary North Carolina Class;

    e. Class treatment will permit the adjudication of relatively small claims by many Preliminary North Carolina Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein;

    f. Absent a class action, the Preliminary North Carolina Class members will continue to suffer losses of statutorily protected rights as well as monetary damages, and if the NC MAA Entities' conduct continues to proceed without remedy, they will continue to reap and retain the proceeds of their ill-gotten gains; and

    g. Many consumers are likely unaware of their rights protected by the North Carolina Debt Collection Act and Residential Rental Agreements Act in regards to the threatened imposition of Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court.

## COMMON CLASS ALLEGATIONS:
### "North Carolina Payment Class"

143.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

144.    Pursuant to Rule 23 of the North Carolina Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class initially defined as the "North Carolina Payment Class."

> All natural persons who (a) at any point within the four (4) year period preceding the filing of Plaintiff's Complaint and during its pendency (b) resided in any of the properties in North Carolina owned and managed by Defendants (c) were charged Court Costs and Attorneys' Fees prior to a North Carolina court taxing such Court Costs and Attorneys' Fees to the particular individual (d) and actually paid such Court Costs and Attorneys' Fees to Defendants.

145.    The North Carolina Payment Class members are so numerous that joinder of all is impractical. The names and addresses of potential North Carolina Payment Class members are readily identifiable through the business records maintained by the NC MAA Entities, and the North Carolina Payment Class members may be notified of the pendency of this action by published and/or mailed notice.

146.    Upon information and belief, within the four (4) year period preceding the filing of Plaintiff's Complaint, the NC MAA Entities have improperly charged Court Costs and Attorneys' Fees to thousands of proposed North Carolina Payment Class members, and pursuant to the same policies and procedures, actually collected Court Costs and Attorneys' Fees against such tenants.

147.    The NC MAA Entities' policies and procedures, including the Collection Policy, specifically authorize and require Defendants to charge Court Costs and Attorneys' Fees to any tenant with a balance on their account ledger in excess of $0.00 on or immediately after the 9th

26

day of the month. Defendants' policies and procedures, including the Collection Policy, specifically authorize and require Defendants to collect such amounts: (a) prior to filing a complaint in summary ejectment, (b) prior to dismissing any filed complaint in summary ejectment, (c) prior to being awarded such amounts by a North Carolina court, and/or (d) even after a North Carolina court assesses all costs against Defendants.

148.    Individual managers, employees, associates, or other agents of Defendants have no discretion as to the implementation of Defendants' policies and procedures, including the Collection Policy. Each and every member of the proposed North Carolina Payment Class is subject to the NC MAA Entities' policies and procedures. Each and every member of the proposed North Carolina Payment Class has actually paid Court Costs and Attorneys' Fees to which they were not lawfully entitled.

149.    Each member of the proposed North Carolina Payment Class is a "tenant" subject to the protections of N.C.G.S. § 42-46.

150.    Each member of the proposed North Carolina Payment Class is a "consumer" as defined by N.C.G.S. § 75-50.

151.    The requirements of Rule 23 are met in that this class, upon information and belief, consists of thousands of present and former tenants of the NC MAA Entities' apartment properties, who have already been charged, and paid, Court Costs and Attorneys' Fees without lawful authorization.

152.    Common questions of law and fact predominate over any individual issues that may be presented, because the NC MAA Entities have a pattern, practice, and policy of charging and collecting Court Costs and Attorneys' Fees without lawful authorization as described herein. Common questions include, but are not limited to:

a. Whether the NC MAA Entities' pattern, practice, and policy of collecting Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court violates N.C.G.S. § 42-46;

b. Whether the NC MAA Entities' pattern, practice, and policy of collecting from members of the North Carolina Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-54(4) in that the NC MAA Entities' collected or attempted to collect debt by falsely representing the character, extent, or amount of the debt by stating that a specific amount of debt is presently due and owing that includes Court Costs and Attorneys' Fees prior to the award of such amounts by a North Carolina court;

c. Whether the NC MAA Entities' pattern, practice, and policy of collecting from members of the North Carolina Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-54(6) in that the NC MAA Entities' falsely represented that an existing obligation of the consumer may be increased by additional court costs, filing fees, or other legal fees prior to the award of such amounts by a North Carolina court; and

d. Whether the NC MAA Entities' pattern, practice, and policy of collecting from members of the North Carolina Payment Class Court Costs and Attorneys' Fees without lawful authorization constitutes a violation of N.C.G.S. § 75-55(2).

153. Plaintiff's claims are typical of the claims of each North Carolina Payment Class member and all are based on the same facts and legal theories.

g. The NC MAA Entities' have a specific policy of collecting Court Costs and Attorneys' Fees from each member of the proposed North Carolina Payment Class; and

h. The NC MAA Entities' policies and procedures have resulted in potential members of the North Carolina Payment Class actually paying Court Costs and Attorneys' Fees that are not owed at the time they are collected. Plaintiff has no interests adverse or antagonistic to the interests of other members of the North Carolina Payment Class.

66. Plaintiff will fairly and adequately protect the interests of the North Carolina Payment Class and has retained experienced counsel, competent in the prosecution of consumer debt collection violations in the context of class action litigation.

154. Neither Plaintiff nor his counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and

28

has accepted such responsibilities.

155. The NC MAA Entities' have acted on grounds generally applicable to the proposed North Carolina Payment Class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

156. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action. Plaintiff further alleges that certification of the North Carolina Payment Class is appropriate in that:

a. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individuals' actions would engender;

b. Each and every member of the proposed North Carolina Payment Class is subject to the same policies and procedures as set forth herein, including the Collection Policy;

c. The policies and procedures as set forth herein, including the Collection Policy, are mandatory throughout all of Defendant MAA's North Carolina properties; individual managers, employees, associates, or other agents of the NC MAA Entities' have no discretion as to the implementation of the policies and procedures;

d. Class treatment will permit the adjudication of relatively small claims by many North Carolina Payment Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein;

e. Absent a class action, the North Carolina Payment Class members will continue to suffer losses of statutorily protected rights as well as monetary damages, and if the NC MAA Entities' conduct continues to proceed without remedy, they will continue to reap and retain the proceeds of their ill-gotten gains; and

f. Many consumers are likely unaware of their rights protected by the North Carolina Debt Collection Act and Residential Rental Agreements Act in regards to the imposition of Court Costs and Attorneys' Fees prior to dismissing the complaint in summary ejectment filed against a tenant.

## FIRST CAUSE OF ACTION
**Violation of the North Carolina Residential Rental Agreements Act**

157.   All paragraphs of this complaint are incorporated herein as if fully restated.

158.   Defendants' conduct as described above is subject to N.C.G.S. § 42-46 of the Residential Rental Agreements Act.

159.   N.C.G.S. § 42-46(e) – (h) specifically limits the amounts that can be charged to a tenant for eviction related fees. Any amounts charged in excess of this limitation is against North Carolina's public policy and therefore void and unenforceable.

160.   The Court Costs and Attorneys' Fees charged by Defendants to Plaintiff and members of the Class were separate from and in excess of the amount allowed under N.C.G.S. § 42-46 and constitute a violation of North Carolina law.

161.   The amount of Court Costs and Attorneys' Fees charged by Defendants to Plaintiff and other members of the Class are separate from and in excess of the amounts allowed under N.C.G.S. § 42-46.

162.   As a proximate result of Defendants' conduct, Plaintiff and all members of the Classes were damaged and are entitled to recover all amounts of Court Costs and Attorneys' Fees paid to Defendants in violation of N.C.G.S. § 42-46. This amount is in excess of $25,000.

## SECOND CAUSE OF ACTION
### Violation of North Carolina Debt Collection Act
### N.C.G.S. § 75-50, *et seq.*

163.   All paragraphs of this complaint are incorporated herein as if fully restated.

164.   Plaintiff and each member of the Class is a "consumer," as that term is defined by N.C.G.S. § 75-50.

165.   The amount purportedly owed to Defendants by Plaintiff and each member of the Proposed Classes is a "debt," as that term is defined by N.C.G.S. § 75-50.

166.   At all times relevant to this action, Defendants, in the ordinary course of

30

business as lessors of residential rental property, engaged in acts or practices affecting commerce within the meaning of N.C.G.S. §75-1.1.

167.    Defendants, in seeking to recover past due rent, fees, and other charges, are "debt collectors" as defined by the North Carolina Debt Collection Act, N.C.G.S. § 75-50 ("NCDCA").

168.    Defendants' actions described above constitute the collection of a "debt" under N.C.G.S. § 75-50.

169.    Defendants are subject to the requirements of N.C.G.S. § 75-50 *et seq.*, that prohibits certain activities by debt collectors.

170.    N.C.G.S.§ 75-54(2) makes it unlawful to fail to disclose in all communications attempting to collect a debt that the purpose of the communication is to collect a debt.

171.    Defendants' communications as described above constituted "communications attempting to collect a debt" subject to the disclosure requirements of N.C.G.S.§ 75-54 (2).

172.    Defendants' communications to Rowland and members of the Class as described above attempted to collect a debt owed by Plaintiff and members of the Plaintiff Classes without disclosing that the purpose of the communication was to collect a debt, in violation of N.C.G.S.§ 75-54 (2).

173.    N.C.G.S. §75-55(2) makes it unlawful for a debt collector to collect or attempt to collect from a consumer any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee, charge or expense.

174.    A violation of either N.C.G.S § 42-46 or N.C.G.S.§ 75-55(2) by Defendants in this matter constitutes an unfair debt collection under Chapter 75.

31

175.     Defendants collected or attempted to collect from Plaintiff and members of the class a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was legally prohibited under N.C.G.S. 42-46, in violation of N.C.G.S. §75-55(2).

176.     Defendants collected or attempted to collect from Plaintiff and members of the class a charge, fee or expense incidental to the principal debt of the monthly rent owed, that was an illegal and unenforceable penalty, in violation of N.C.G.S. §75-55(2).

177.     Defendants actions in violation of North Carolina's Unfair Debt Collection Act were willful.

178.     Plaintiff and each member of the proposed Plaintiff class were injured by Defendants' actions and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 per violation resulting from each of Defendants' unfair debt collection practices pursuant to N.C.G.S. § 75-56.

179.     Plaintiff and each member of the Class were injured and sustained damages by Defendants' actions and are entitled to actual damages to be established at trial as well as statutory damages for each violation in the maximum amount allowed by law, as well as reasonable attorneys' fees for an amount in excess of $25,000.00.

### THIRD CAUSE OF ACTION
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act N.C.G.S. § 75-1.1, *et seq.* ("UDTPA")**

180.     All paragraphs of this complaint are incorporated herein as if fully restated.

181.     At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina.

182.     The conduct of Defendants as set forth herein is against the established public

32

policy of the State of North Carolina; is unethical, oppressive, unscrupulous, and substantially injurious to the consumers of North Carolina; and has the capacity and tendency to deceive the average consumer.

183. Defendants' violations of the UDTPA include, but are not limited to, (a) misrepresenting the character, amount, or legal status of the obligation alleged to be owed by Plaintiff and each member of the class; (b) employing a system, policies, and procedures for the collection of debt which is unfair, deceptive, and misleading, and not permitted by both the public policy of North Carolina and the express statutory provisions of N.C.G.S. § 42-46; (c) utilizing false representations and deceptive measures to collect or attempt to collect Court Costs and Attorneys' Fees which are unlawful; (d) undertaking actions which Defendants knew, or should have known, offends well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to consumers, such as Plaintiff; and (e) employing and otherwise undertaking the aforementioned procedures, policies, actions, and methods with the explicit knowledge that such conduct was in violation of applicable North Carolina law.

184. The matters alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiff and each member of the Class.

185. Plaintiff and members of the Class suffered actual injury as a result of Defendants' unfair actions. Such injury consists of, but is not limited to emotional distress damages and money damages resulting from Defendants' demanding and obtaining fees and costs in excess of amounts allowed pursuant to North Carolina law from Plaintiff and each member of the Class.

186. Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, which are proscribed by Chapter 75 of the North Carolina General

Statutes.

187.    Plaintiff and each member of the Class have been damaged and are entitled to recover treble damages and attorneys' fees incurred in this action.

### FOURTH CAUSE OF ACTION
**Petition for Injunction N.C.G.S. § 1-485, *et seq.***

188.    All paragraphs of this complaint are incorporated herein as if fully restated.

189.    Plaintiff and each member of the Class seek a temporary and permanent injunction enjoining Defendants from attempting to unlawfully collect upon debt as set forth herein pursuant to N.C.G.S. § 1-485, *et. seq.*

### FIFTH CAUSE OF ACTION
**Petition for Declaratory Judgment N.C.G.S. § 1-253, *et seq.***

190.    All paragraphs of this complaint are incorporated herein as if fully restated.

191.    Plaintiff and the members of the Class file this Petition for a Declaratory Judgment under N.C.G.S. Chapter 1, Article 25, and the Court has jurisdiction of this matter under such statute.

192.    Plaintiff and the members of the Class have an actual controversy with Defendants resulting from Defendants' erroneous interpretation of the applicable law.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff; and members of the proposed Plaintiff Classes respectfully request that this Court:

1.      Assume jurisdiction over this action;

2.      Certify the Class and appointing Plaintiff and his counsel to represent the classes;

3.      Issue a declaratory judgment that Defendants' actions as set forth herein violated

34

the rights of Plaintiff and each member of the Proposed Classes pursuant to N.C.G.S. § 75-54, or in the alternative N.C.G.S. § 75-1.1;

4.  Issue a declaratory judgment that Defendants' actions as set forth herein violated the rights of Plaintiff and each member of the Proposed Classes pursuant to N.C.G.S. § 75-55, or in the alternative N.C.G.S. § 75-1.1;

5.  Issue a declaratory judgment that Defendants' Standard Lease and any substantially similar residential lease agreement used by Defendants is contrary to N.C.G.S. § 42-46 and therefore void and unenforceable as against public policy;

6.  Enjoin Defendants from collecting or attempting to collect any payment of Court Costs and Attorneys' Fees from members of the Proposed Classes unless and until a North Carolina court taxes each such amount against a tenant;

7.  Award Plaintiff and each member of the Proposed Classes compensatory damages in an amount to be determined at trial;

8.  Award Plaintiff and each member of the Proposed Classes punitive damages amount to be determined at trial;

9.  Award Plaintiff and each class member a statutory penalty in an amount no more than $4,000 for each violation of N.C.G.S. § 75-50 *et seq.*;

10.  Award Plaintiff and each class member damages calculated pursuant to N.C.G.S. § 75-8 for each week that Defendants' illegal conduct occurred;

11.  Award Plaintiff all statutory and actual damages to which he is entitled separate and apart from the Proposed Classes in an amount in excess of $25,000.00;

12.  Treble all damages resulting from a violation of N.C.G.S. § 42-46 in accordance with N.C.G.S. § 75-1.1;

35

13. Award attorneys' fees to Plaintiff and members of the Proposed Classes pursuant to N.C.G.S. § 75-16.1;

14. Tax the costs of this action to Defendants, or any of them;

15. Allow a trial by jury on all issues so triable; and

16. Grant Plaintiff and the members of the Proposed Classes such other and further relief as the Court deems just and proper.

Respectfully submitted on this ___18th___ day of December, 2017.

WHITFIELD BRYSON & MASON LLP

Scott C. Harris
N.C. Bar No.: 35328
Patrick M. Wallace
N.C Bar No..: 48138
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-500
Facsimile: (919) 600-5035
scott@wbmllp.com
pat@wbmllp.com


MAGINNIS LAW, PLLC
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnislaw.com
kgwaltney@maginnislaw.com

*Attorneys for Plaintiff Ricardo Rowland*

36